

Joshua Cohen Slatkin (SBN 285090)
jcohenslaktin@jcslaw4you.com
LAW OFFICE OF JOSHUA COHEN SLATKIN
11620 Wilshire Blvd., Suite 900
Los Angeles, California 90025
Telephone: (310) 627-2699
Facsimile: (310) 943-2757

Arnab Banerjee (SBN 252618)
arnab@bannerlawgroup.com
BANNER LAW GROUP
11750 Wilshire Blvd., Suite 1250
Los Angeles, California 90025
Telephone: (323) 426-2991
Facsimile: (323) 426-2975

Attorneys for Plaintiff,
Manuel Andrade

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MANUEL ANDRADE, on behalf of himself and all other similarly situated,

Plaintiff,

vs.

BEACON SALES ACQUISITION, INC., BEACON ROOFING SUPPLY, INC.; and DOES 1 through 50, inclusive,

Defendants.

Case No.: 2:19-cv-06963-MCS (RAOx)
Hon. Mark C. Scarsi

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Date: May 24, 2021
Time: 9:00 a.m.
Place: Courtroom 7C

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 24, 2021 at 9:00 a.m.., or as soon thereafter as counsel may be heard, in Courtroom 7C of the above-captioned court, the Honorable Mark C. Scarsi presiding, Plaintiff Manuel Andrade will, and hereby does, move this Court for entry of an order and judgment granting final approval of the class action settlement and all agreed-upon terms therein. This Motion, unopposed by Defendants Beacon Sales Acquisition, Inc. and Beacon Roofing Supply, Inc. ("Beacon" or "Defendants"), seeks final approval of: (1) the Joint Stipulation of Class Action Settlement and Release; (2) settlement payments to Participating Class Members and the LWDA; and (3) and costs/expenses to the settlement administrator, Simpluris, Inc.

This Motion is based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Motion for Final Approval of Class Action Settlement; (3) the Declaration of Arnab Banerjee; (4) the Declaration of Cassandra Cita; (5) the [Proposed] Order Granting Final Approval of the Class Action Settlement; (6) the records, pleadings, and papers filed in this action; and (7) upon such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

Dated: April 26, 2021

Respectfully submitted,

Banner Law Group, P.C.

By: /s/ Arnab Banerjee
Arnab Banerjee

Plaintiff Manual Andrade

# TABLE OF CONTENTS

I. INTRODUCTION ........ 1
II. FACTS AND PROCEDURE ........ 3
i. Settlement Consideration ........ 5
ii. Formula for Calculating Settlement Payments ........ 5
iii. Release by the Settlement Class ........ 6
b. The Notice and Settlement Administration Process Were Completed Pursuant to the Court's Preliminary Approval Order ........ 7
III. ARGUMENT ........ 8
A. The Standard for Final Approval Has Been Met ........ 8
B. The Consideration Provided for the Class Claims Is Fair and Reasonable In Light of the Amount in Controversy Discounted by the Risks of Continued Litigation ........ 9
C. The Consideration Provided for the PAGA Claim Is Fair and Reasonable In Light of the Amount in Controversy Discounted by the Risks of Continued Litigation ........ 15
D. The Settlement Was Reached through Arm's-Length Bargaining in Which All Parties Were Represented by Experienced Counsel ........ 18
E. The Parties Conducted a Thorough Investigation of the Factual and Legal Issues ........ 19
F. The Settlement Class Has Responded Positively to the Settlement ........ 19
G. The Requested Payment to the Settlement Administrator Is Reasonable and Should Receive Final Approval ........ 20
IV. CONCLUSION ........ 20

# TABLE OF AUTHORITIES

## FEDERAL CASES


*Aguirre v. Genesis Logistics*, No. SACV 12-00687 JVS (ANx), 2013 WL 10936035 (C.D. Cal. Dec. 30, 2013)………………….………………….17

*Amalgamated Transit Union Local 1309, AFL-CIO v. Laidlaw Transit Services, Inc.*, No. 05cv1199–IEG–CAB, 2009 WL 2448430 (S.D. Cal. 2009)…………………………...…………………..15

*Campbell v. Best Buy Stores, L.P.*, 2013 U.S. Dist. LEXIS 137792 (C.D. Cal. Sept. 20, 2013)…………………...…………………………13

*Chu v. Wells Fargo Invst., LLC*, No. C 05–4526 MHP (N.D. Cal Feb. 16, 2011), 2011 WL 672645………………..…………………...17, 18

*Churchill Village, LLC v. General Electric*, 361 F.3d 566 (9th Cir. 2004)…...….20

*Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030 (N.D. Cal. 2016)……….……….....…16

*Dearaujo v. Regis Corp.*, No. 2:14-cv-01408-KJM-AC (E.D. Cal. June 29, 2016), 2016 WL 3549473………………………...…………...17

*Doty v. Costco Wholesale Corp.*, Case No. CV05-3241 FMC-JWJx (C.D. Cal.)…………………………...………………………………11

*Eduardo Figueroa, Sr., et al. v. Allied Building Products Corp.*, No. 8:16-cv- 02249-AG-KES (C.D. Cal. October 11, 2018)....………...……...1

*Fleming v. Covidien*, 2011 WL 7563047 (C.D. Cal. 2011)………...………...16, 17

*Garcia v. Gordon Trucking, Inc.*, No. 1:10–CV–0324 AWI SKO (E.D. Cal. Oct. 31, 2012), 2012 WL 5364575……………………...……..17

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)……………….……..8, 9

*Hopson v. Hanesbrands Inc.*, Case No. 08-00844, 2009 U.S. Dist. LEXIS 33900 (N.D. Cal. Apr. 3, 2009)………………...………………18

*In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436

(S.D.N.Y. 2004)………..……………………………………………………10

*In re IKON Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166 (E.D. Pa. 2000)……………………………...………………………..10

*Jimenez v. Allstate Ins. Co.*, 2012 U.S. Dist. LEXIS 65328 (C.D. Cal. Apr. 18, 2012)…………………………...…………………..13

*Jones v. Bath & Body Works, Inc.*, No. 2:13-cv-05206-FMO-AJW (C.D. Cal. July 11, 2016)…………………...……………………....12, 20

*Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)……...……………..12

*Li v. A Perfect Day Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2012 WL 2236752 (N.D. Cal. June 15, 2012)………...…………………..17

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998)…...……….11, 12

*Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003)……………………...…………9

*Nat'l Rural Telecomm. Coop. v. Directv, Inc.*, 221 F.R.D. 523(C.D. Cal. 2004)………………………...…………10, 12

*Newman v. Stein*, 464 F. 2d 689 (2nd Cir. 1972)……………...…………………10

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)…………………………….....……………………...8, 11

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009)………..…8, 11, 12

*Sorenson v. PetSmart, Inc.*, Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal.)…………………………...…………………………...12, 20

*Trang v. Turbine Engine Components Technologies Corp.*, No. CV 12–07658 DDP (RZx), 2012 WL 6618854 (C.D. Cal. Dec. 19, 2012)…....15

*In Re Volkswagen*, 2016 WL 4010049……...……………………………………19

///

///

///

**STATE CASES**

*7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal. App. 4th 1135 (2000)……………………………………………...…20

*Ali v. U.S.A. Cab Ltd.*, 176 Cal. App. 4th 1333 (2009)…………………...……...13

*Amaral v. Cintas Corp No. 2*, 163 Cal. App. 4th 1157 (2008)……………....14, 15

*Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004 (2012)………...………14

*Chavez v. Vallarta Food Enterprises, Inc.*, No. BC490630 (L.A. County Super. Ct. Nov. 10, 2014)…………………………...………...18

*Coleman v. Estes Express Lines, Inc.*, No. BC429042 (L.A. County Super. Ct. Oct. 3, 2013)……………………………...……..18

*Elder v. Schwan Food Co.*, No. B223911, 2011 WL 1797254 (Cal. Ct. App. May 12, 2011)…………………………...…………………17

*Fukuchi v. Pizza Hut*, Case No. BC302589 (L.A. County Super. Ct.)…………...11

*Gomez v. Amadeus Salon, Inc.*, Case No. BC392297 (L.A. Super. Ct.)….......11, 20

*Guerrero v. R.R. Donnelley & Sons Co.*, Case No. RIC 10005196 (Riverside County Super. Ct. July 16, 2013)……………………...……18

*Lim v. Victoria's Secret Stores, Inc.*, Case No. 04CC00213 (OC Super. Ct.)…………………………...…………………………12, 20

*Nordstrom Com. Cases*, 186 Cal. App. 4th 576 (2010)……………………...…...18

*Palencia v. 99 Cents Only Stores*, No. 34-2010-00079619 (Sacramento County Super. Ct.)……………………………...………...20

*Parra v. Aero Port Services, Inc.*, No. BC483451 (L.A. County Super. Ct. April 20, 2015)……………………...…………...18

*Ressler v. Federated Department Stores, Inc.*, Case No. BC335018 (L.A. Super. Ct.)…………………………...…………………………12

*Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504

(Cal. Ct. App. 2018)……..........................................................................16

*Thompson v. Smart & Final, Inc.*, No. BC497198
(L.A. County Super. Ct. Nov. 18, 2014)……………………………….....18

*Thurman v. Bayshore Transit Mgmt.*, 203 Cal. App. 4th 1112 (2012)…...………17

**FEDERAL STATUTES**

Fed. R. Civ. Proc. 23(e)…...……………………………………………………8

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17200………………………………...……………6

Cal. Lab. Code § 201…………………...……………………………………...6, 15

Cal. Lab. Code § 202………...…………………………………………………6

Cal. Lab. Code § 203…………………...………………………………………6

Cal. Lab. Code § 225.5……………………...…………………………………15

Cal. Lab. Code § 226…………………………..………………………………...17

Cal. Lab. Code § 226(a)…………………………...……………………………7

Cal. Lab. Code § 226.7…………………………..……………………………..7

Cal. Lab. Code § 510…………………………...………………………………6

Cal. Lab. Code § 512(a)…………………………..……………………………7

Cal. Lab. Code § 1194…………………………………...…………………...6

Cal. Lab. Code § 1194.2………………………………...……………………6

Cal. Lab. Code § 2699(f)(2)……………………...……………………15

Cal. Lab. Code § 2699(h)…………………………..…………………………16

**SECONDARY SOURCES**

Manual for Complex Litigation § 21.632 (4th ed. 2004)……………...……..8, 9

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On January 13, 2021, the Court granted preliminary approval of the Joint Stipulation of Class Action Settlement and Release[1] and approved distribution of the Notice of Class Action Settlement ("Class Notice") to all Class Members. Class Members were given 45 days to opt out or object to the Settlement ("Response Deadline") which expired on March 29, 2021. Plaintiff is pleased to report that: (1) not a single Class Member has objected to the Settlement; (2) no Class Member has opted out of the Settlement Class; (3) the average payment from the Net Settlement Amount is approximately $195.20, and the highest is approximately $586.66. (Declaration of Cassandra Cita ["Cita Decl."] ¶¶ 9-11.)

Given the overwhelmingly positive response to the settlement, Plaintiff now seeks final approval of this Settlement with Defendants (collectively with Plaintiff, the "Parties"). The principal terms of the Settlement provide for the following:

1. The Conditionally Certified Settlement Class defined as: all current and former employees of Defendants who were or are employed in the State of California as an hourly or non-exempt employee at any time during the period from March 26, 2015 to the date the Court preliminarily approves the Settlement, excluding the Figueroa Class Members[2]. (Settlement Agreement ¶ 7).

2. A **non-reversionary** Settlement Amount of Five Hundred and Eighty-Five Thousand Dollars and Zero Cents ($585,000.00) (Settlement Agreement ¶ 20).

a. A Net Distribution Fund distributed to all Class Members,

---

[1] Hereinafter, "Settlement" or "Settlement Agreement." Unless indicated otherwise, all capitalized terms used herein have the same meaning as those defined by the Settlement Agreement. The Settlement Agreement is attached to the Declaration of Arnab Banerjee as Exhibit A.

[2] The Figueroa Class Members are defined as: "all employees who released claims in connection with the class action settlement in *Eduardo Figueroa, Sr., et al. v. Allied Building Products Corp.*, U.S. District Court, Central District of California, Case No. 8:16-cv-02249-AG-KES, and is specifically defined in the Settlement Agreement (Agreement ¶ 15).

calculated as the Settlement Amount minus the requested Attorneys' Fees and Costs, Settlement Administration Costs, the PAGA Allocation, and the Service Payment to the Named Plaintiff, which will be allocated to all Class Members on a pro-rata basis according to the number of Qualifying Workweeks each Class Member worked during the Class Period. (Settlement Agreement ¶ 22). The **entire** Net Distribution Fund will be paid to all Class Members who do not opt out of the Settlement Class without the need to submit claims for payment. (Settlement Agreement ¶¶ 22, 28, 50(g)).

b. Attorneys' fees of one-third of the Class Settlement Amount or One-Hundred Ninety-Five Thousand Dollars ($195,000) and litigation costs of Nineteen Thousand and Ninety-Three Dollars ($19,093) to Class Counsel. (Settlement Agreement ¶¶ 3, 4)[3].

c. Settlement Administration Costs, of Eighteen Thousand Five Hundred Dollars ($18,500), to be paid to the jointly selected settlement administrator Simpluris, Inc. (Settlement Agreement ¶¶ 34, 35).

d. A Twenty Thousand Dollar ($20,000) payment in settlement of the Labor Code Private Attorneys General Act of 2004 ("PAGA") claims ("PAGA Award"). Seventy-Five percent will be paid to the LWDA and Twenty-Five percent will be distributed on a pro-rata basis to Class Members employed by Defendants in California during the PAGA Period ("PAGA Members"). (Settlement Agreement ¶¶ 26, 50(f)).

e. A Service Payment to the Named Plaintiff, Manuel Andrade, of Ten Thousand Dollars ($10,000) for his services on behalf of the Settlement Class and for agreeing to broader releases than those required of other Class Members. (Settlement Agreement ¶ 32).

An objective evaluation of the Settlement confirms that the relief negotiated on the Class's behalf is fair, reasonable, and valuable. The Settlement was negotiated by the

[3] Plaintiff previously filed a Motion for Attorney's Fees and Class Representative Enhancement Payment (Dkt #39).

Parties at arm's length with helpful guidance from the Honorable Jay Gandhi (Ret.), and the Settlement confers substantial benefits to Class Members. The relief offered by the Settlement to Class Members—averaging approximately $195.20—is particularly impressive when viewed against the difficulties encountered by plaintiffs pursuing wage and hour cases. Indeed, by settling now rather than proceeding to trial, Class Members will not have to wait (possibly years) for relief, nor will they have to bear the risk of class certification being denied or of Defendant prevailing at trial.

Accordingly, given the Settlement's favorable terms and the manner in which these terms were negotiated and received by Class Members, Plaintiff respectfully requests that the Court grant this Motion for Final Approval of the Settlement Agreement and retain jurisdiction to enforce the Settlement.

## II. FACTS AND PROCEDURE

### A. Overview of the Litigation

On March 26, 2019, Plaintiff filed a wage and hour class action and PAGA representative action against Defendants on behalf of himself and other non-exempt hourly employees who worked for Defendants in California from March 26, 2015 through the present in Los Angeles County Superior Court. (Declaration of Arnab Banerjee ["Banerjee Decl."] ¶ 2). A First Amended Complaint was filed on April 10, 2019. (Id.)

On August 9, 2019, Defendants removed the Action to this Court. Plaintiff has litigated this matter in this Court since that time. (Banerjee Decl. ¶ 3)

### B. Plaintiff's Counsel Conducted a Thorough Investigation.

The Settlement is the product of informed negotiations following extensive investigation and discovery by Plaintiff's Counsel. During this matter's pendency, the Parties thoroughly investigated and researched the claims in controversy, their defenses, and the developing body of law. (Banerjee Decl. ¶ 4)

Overall, Plaintiff's Counsel performed an exhaustive investigation into the claims at issue, which included: (1) determining Plaintiff's suitability as a putative class

representative through interviews, background investigations, and analyses of his employment files and related records; (2) evaluating all of Plaintiff's potential claims; (3) researching similar wage and hour class actions as to the claims brought, the nature of the positions, and the type of employer; (4) analyzing Defendant's labor policies and practices and the payroll records for the entire class; (5) hiring and working with an expert who analyzed the time and payroll records of class members; (6) taking the deposition of Defendant's corporate designee; (7) defending Plaintiff's deposition; (8) drafting the mediation brief; (9) participating in mediation; (7) conducting a discounted valuation analysis of the claims; (8) preparing a motion for class certification; and (10) negotiating and finalizing the Settlement Agreement. The extensive document and data exchanged allowed Plaintiff's Counsel to appreciate the strengths and weaknesses of Plaintiff's claims and the benefits of the proposed Settlement. (Banerjee Decl. ¶ 5.)

**C. The Parties Settled After A Mediation and Extensive Discovery.**

In February 2020, the Parties participated in a full day of mediation with the Honorable Jay C. Gandhi (Ret.). Although the Parties did not settle at mediation, they continued their settlement negotiations with Judge Gandhi's continuing guidance. The parties were able to close the gap between their respective positions significantly through mediation and subsequent discussions. (Banerjee Decl. ¶ 6.)

Following mediation, the parties continued to litigate and conducted extensive formal discovery. This allowed the Parties to further evaluate their respective positions, and the Parties subsequently came to an agreement on the principal terms of a settlement. The complete and final terms of the Parties' settlement are now set forth in the Class Action Settlement Agreement and Stipulation. At all times, the Parties' negotiations were adversarial and non-collusive, and the Settlement thus constitutes a fair, adequate, and reasonable compromise of the claims at issue. (Banerjee Decl. ¶ 7.)

**D. Preliminary Approval of the Settlement Was Granted**

On January 13, 2021, the Court granted preliminary approval of the settlement. (Dkt # 38) Specifically, the Court: (1) conditionally certified the class for the purpose of

settlement, (2) found that the settlement was the product of serious informed, and non-collusive negotiations; (3) found that there were no obvious deficiencies; and (4) found the settlement falls within the range of possible approval. (Id.)

**E. The Proposed Settlement Fully Resolves Plaintiff's Claims**

**i. Settlement Consideration**

Plaintiff and Defendant have agreed to settle all class claims and representative claims alleged in the action in exchange for the Class Settlement Amount of $585,000. The Class Settlement Amount includes: (1) Individual Settlement Payments; (2) $195,000 in attorneys' fees and $19,093 in litigation costs/expenses to Plaintiff's Counsel; (3) a $15,000 payment to the LWDA; (4) Settlement Administration Costs of $18,500; and (5) a Class Representative Enhancement Payment of $10,000 to Plaintiff Manuel Andrade for his service on behalf of the Settlement Class and for a general release of all claims arising out of his employment. (*See generally* Settlement Agreement.)

Subject to the Court approving Attorneys' Fees and Costs, the payment to the LWDA, Settlement Administration Costs, and the Class Representative Enhancement Payment, the Net Settlement Amount will be distributed to all Participating Class Members. Because the Class Settlement Amount is non-reversionary, 100% of the Net Settlement Amount will be distributed to Class Members, and without the need to submit claims for payment. (*Id.* at ¶¶ 14, 34-35.)

**ii. Formula for Calculating Settlement Payments**

Each Class Member's share of the Net Settlement Amount will be proportional to the number of weeks he or she worked during the Class Period. (Settlement Agreement ¶ 50.) Individual Settlement Payments will be calculated as follows:

- Defendant will calculate the total number of Workweeks worked by each Class Member during the Class Period and the aggregate total number of Workweeks worked by all Class Members during the Class Period.
- To determine each Class Member's estimated "Individual Settlement

Payment," the Settlement Administrator will use the following formula: The Net Settlement Amount will be divided by the aggregate total number of Workweeks, resulting in the "Workweek Value." Each Class Member's "Individual Settlement Payment" will be calculated by multiplying each individual Class Member's total number of Workweeks by the Workweek Value.

- The Individual Settlement Payment will be reduced by any required deductions for each Participating Class Members as specifically set forth herein, including employee-side tax withholdings or deductions.
- The entire Net Settlement Amount will be disbursed to all Class Members who do not submit timely and valid Requests for Exclusion. If there are any valid and timely Requests for Exclusion, the Settlement Administrator shall proportionately increase the Individual Settlement Payment for each Participating Class Member according to the number of Workweeks worked, so that the amount actually distributed to the Settlement Class equals 100% of the Net Settlement Amount.

**iii. Release by the Settlement Class**

In exchange for the Class Settlement Amount, Plaintiff and Class Members who do not opt out will agree to release the Released Parties for the Settled Claims (*see* Settlement Agreement ¶ 36), which are defined as:

> All claims, charges, complaints, liens, demands, causes of action, obligations, damages and liabilities, that arise during the Class Period that each Class Member had, now has, or may hereafter claim to have against the Released Parties and that were asserted in the Complaint, or that could have been asserted in the Complaint based on any of the facts and allegations in the Complaint, regardless of whether such claims arise under federal, state and/or local law, statute, ordinance, regulation, common law, or other source of law. The Settled Claims specifically include, but are not limited to, claims for all alleged violations of the Labor Code and Wage Order cited in the Complaint as well as claims for: (1) unfair competition in violation of California Business & Professions Code § 17200, et seq.; (2) failure to pay minimum and overtime wages in violation of California Labor Code §§1194, 1194.2, and 510; (3) failure to provide all wages due at the end of employment in violation of California Labor Code §§ 201, 202, and 203; (4) failure to provide compliant wage statements in violation

of California Labor Code § 226(a); and (5) failure to provide compliant meal periods and rest periods, and associated premiums, in violation of California Labor Code §§ 226.7 and 512(a).

(Settlement Agreement ¶ 36.)

**b. The Notice and Settlement Administration Process Were Completed Pursuant to the Court's Preliminary Approval Order**

As authorized by the Court's Order preliminarily approving the Settlement Agreement, the Parties engaged Simpluris, Inc. to provide settlement administration services. (Cita Decl. ¶ 4.) On January 15, 2021, Simpluris received the Class Notice prepared jointly by Plaintiff's Counsel and counsel for Defendant and approved by the Court. (Cita Decl. ¶ 4.) The Class Notice summarized the Settlement's principal terms, provided Class Members with an estimate of how much they would be paid if the Settlement received final approval, and advised Class Members about how to opt out of the Settlement and how to object. (*Id.*)

Separately, counsel for Defendant provided Simpluris with a mailing list (the "Class List"), which included each Class Member's full name, last known address, Social Security Number, and information necessary to calculate payments. (Cita Decl. ¶ 5.) The mailing addresses contained in the Class List were processed and updated using the National Change of Address Database maintained by the U.S. Postal Service. (*Id.* at ¶ 5-6.)

On February 11, 2021, Simpluris mailed Class Notices to Class Members via First-Class U.S. mail. (*Id.* at ¶ 6.) Simpluris set up a toll-free telephone number, which was included in the Class Notice to answer Class Member questions regarding the Settlement. The system is accessible 24 hours a day, 7 days a week, and will remain in operation throughout the settlement process. Callers have the option to speak with a live call center representative in English or Spanish during normal business hours or to leave a message and receive a return call during nonbusiness hours. (*Id.* at ¶ 7.) In addition, the Settlement documents and Plaintiff's Motion for Attorney's Fees and Class Representative Enhancement Payment were available on Simpluris's website. (*Id.*)

Class Members were given until March 29, 2021 to opt out or object to the Settlement. Plaintiff is pleased to report that the response to the settlement has been universally positive. Not a single Class Members has objected to the Settlement, and no Class Member opted out of the Settlement Class. (*Id.* at ¶¶ 9-10.)

## III. ARGUMENT

### A. The Standard for Final Approval Has Been Met

A class action may only be settled, dismissed, or compromised with the Court's approval. Fed. R. Civ. Proc. 23(e). The process for court approval of a class action settlement is comprised of three principal stages:

Preliminary Approval: The proposed settlement agreement is preliminarily reviewed by the Court for fairness, adequacy, and reasonableness. If the Court believes the settlement falls within the range of reasonableness, such that proceeding to a formal fairness hearing is warranted, it orders notice of the settlement disseminated to the class. *See* Manual for Complex Litigation § 21.632 (4th ed. 2004).

Class Notice: Notice of the settlement is disseminated to the class, giving class members an opportunity to object to the settlement's terms or preserve their right to bring an individual action by opting out. *See id.*, § 21.633.

Final Approval: A formal fairness or final-approval hearing is held by the Court, at which class members can be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented.[4] Following the hearing, the Court decides whether to approve the settlement

---

[4] A proposed class action settlement may be approved if the Court, after allowing absent class members an opportunity to be heard, finds that the settlement is "fair, reasonable, and adequate." In making this determination, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (*quoting Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)); *see also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation . . . .").

and enter a final order and judgment. *See id.*, § 21.634.

The first two steps have been completed. The Court has preliminarily reviewed the proposed settlement for fairness and found it to be within the range of reasonableness meriting court approval. (*See* Order Granting Preliminary Approval of Class Settlement, [Dkt. # 38].) In addition, the Settlement Administrator has notified Class Members of the proposed settlement and upcoming fairness hearing as directed by the Court. (*See generally* Cita Decl.) Plaintiff now moves the Court to grant final approval of the proposed settlement.

The decision about whether to approve the proposed settlement is committed to the sound discretion of the trial judge and will not be overturned except upon a strong showing of a clear abuse of discretion. *Hanlon*, 150 F.3d at 1026-1027. The Ninth Circuit has set forth a list of non-exclusive factors that a district court should consider in deciding whether to grant final approval, namely: (1) the strength of plaintiffs' case, and the risk, expense, complexity, and likely duration of further litigation; (2) the risk of maintaining class action status throughout the trial; (3) the amount offered in settlement; (4) the extent of discovery completed, and the stage of the proceedings; (5) the experience and views of counsel; and (6) the reaction of the class members to the proposed settlement. *Id.* at 963 (*citing Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003)).

These factors, which are discussed below, confirm that the proposed settlement is more than fair, reasonable, and adequate for Class Members. The settlement provides considerable value; Class Members need not bear the risk and delay associated with trial proceedings to obtain these benefits; and the Settlement has been met with substantial support and no opposition from Class Members.

### B. The Consideration Provided for the Class Claims Is Fair and Reasonable In Light of the Amount in Controversy Discounted by the Risks of Continued Litigation

Federal district courts recognize that there is an inherent "range of

reasonableness" in determining whether to approve a settlement "which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Id.* at 188, *quoting Newman v. Stein*, 464 F. 2d 689, 693 (2d Cir. 1972). *See Nat'l Rural Telecomm. Coop. v. Directv, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery").[5]

As explained in detail below, relief provided for the release of Plaintiff's class claims is within the range of reasonableness in light of the nature and magnitude of the claims being settled and the various potential impediments to recovery. Plaintiff determined an appropriate range of recovery for settlement purposes by offsetting Defendant's maximum theoretical liability by: (i) the strength of Defendant's defenses on the merits; (ii) the risk of class certification being denied; (iii) the risk of losing on any of a number of dispositive motions that could have been brought between certification and trial (e.g., motions to decertify the class, motions for summary judgment, and/or motions in limine) that might have eliminated all or some of Plaintiff's claims; (iv) the risk of losing at trial (including the Court deeming the trial unmanageable on a representative basis); (v) the chances of a favorable verdict being reversed on appeal; and (vi) the difficulties attendant to collecting on a judgment.

**1. The Class Settlement Amount is Reasonable When Balanced Against the Merits and Risks of Litigation**

The Parties agreed to settle all class and representative claims alleged in the Action in exchange for the Settlement Amount of $585,000 and a Net Distribution Fund of approximately $320,000. Subject to the Court's approval, the Net Distribution Fund will be distributed to all Settlement Class Members. The Class Settlement Amount is

[5] *See also In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y. 2004) ("settlement amount's ratio to the maximum potential recovery need not be the sole, or even dominant, consideration when assessing settlement's fairness"); *In re IKON Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000) ("the fact that a proposed settlement constitutes a relatively small percentage of the most optimistic estimate does not, in itself, weigh against the settlement; rather the percentage should be considered in light of strength of the claims").

non-reversionary; 100% of the Net Distribution Fund will be paid to Settlement Class Members without the need to submit claims for payment. (Settlement Agreement. at ¶¶ 20, 55(a)). Thus, the Settlement offers substantial benefit to Class Members. The relief offered by the Settlement is particularly impressive when viewed against the difficulties encountered by plaintiffs pursuing wage and hour cases.

In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned, the Court may consider the strength of the plaintiff's case and the amount offered in settlement, among other factors. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). Ultimately, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice," and there is no single "formula" to be applied; rather, the Court may presume that the parties' counsel and the mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Rodriguez v. West Pub. Corp*., 563 F.3d 948, 965 (9th Cir. 2009).

Given that there are approximately 1,700 Class Members, the average net recovery is approximately $195.20. This average net recovery is considerably greater than many wage and hour class action settlements approved by California state and federal courts. *See*, *e.g.*, *Doty v. Costco Wholesale Corp.*, Case No. CV05-3241 FMC-JWJx (C.D. Cal.) (average net recovery of approximately $65); and *Gomez v. Amadeus Salon, Inc.*, Case No. BC392297 (L.A. Super. Ct.) (average net recovery of approximately $20); *Fukuchi v. Pizza Hut*, Case No. BC302589 (L.A. County Super. Ct.) (average net recovery of approximately $120); *Ressler v. Federated Department Stores, Inc.*, Case No. BC335018 (L.A. Super. Ct.) (average net recovery of approximately $90); *Sorenson v. PetSmart, Inc.*, Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal.) (average net recovery of approximately $60); *Lim v. Victoria's Secret Stores, Inc.*, Case No. 04CC00213 (OC Super. Ct.) (average net recovery of approximately $35); *Jones v. Bath & Body Works, Inc.*, No. 2:13-cv-05206-FMO-AJW (C.D. Cal. July

11, 2016) (average net recovery of approximately $50).

In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned, the Court may consider the strength of the plaintiff's case and the amount offered in settlement, among other factors. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). Ultimately, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice," and there is no single "formula" to be applied; rather, the Court may presume that the parties' counsel arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery. Officers for *Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Rodriguez v. West Pub. Corp.,* 563 F.3d 948, 965 (9th Cir. 2009); *see also Nat'l Rural Telecomm. Coop. v. Directv, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery.")

Here, as described above and detailed in Plaintiff's Motion for Preliminary Approval, Plaintiff's counsel conducted extensive discovery regarding the strengths and weaknesses of the class claims. While Plaintiff is confident that he has strong claims, he also recognizes that if the litigation had continued, he may have encountered legal and factual hurdles that could have prevented the Class from obtaining any recovery. For example, although a number of cases have found wage and hour actions to be especially amenable to class resolution, several have found that some of the very claims at issue here were not suitable for class adjudication because they raised too many individualized issues.[6] Had a Settlement not been reached, Defendants would have aggressively opposed class certification, and would have further sought to have the PAGA claim

[6] *See e.g., Ali v. U.S.A. Cab Ltd.*, 176 Cal. App. 4th 1333, 1341 (2009) (denying certification because employees' declarations attesting to having taken meal and rest breaks demonstrated that individualized inquiries were required to show harm); *Campbell v. Best Buy Stores, L.P.*, 2013 U.S. Dist. LEXIS 137792, at *30-41 (C.D. Cal. Sept. 20, 2013) (following *Brinker* and denying certification of proposed off-the-clock and rest and meal break classes due to lack of uniform policy); *Jimenez v. Allstate Ins. Co.*, 2012 U.S. Dist. LEXIS 65328 (C.D. Cal. Apr. 18, 2012) (denying motion to certify meal and rest break classes based on employer's practice of understaffing and overworking employees).

deemed unmanageable.

Given the discretion accorded to the district court, even a relatively strong case on the merits may not satisfy the standards for certification on a contested motion. This reality added to the risk of continued litigation and militated in favor of settlement. Indeed, it is usually preferable to reach an early resolution of a dispute because such resolutions save time and money that would otherwise go to litigation. For example, if this action had settled following additional litigation, the settlement amount would likely have taken into account the additional costs incurred, and there may have been less available for Class Members.

Moreover, if the Court denied Plaintiff's motion for class certification, Defendants would have likely offered *no* money to settle the class-wide claims. As a general matter, the value of class claims is largely dependent on the size of a putative class. Prior to certification, there is no actual class, only a prospective class. The value of the claims asserted on their behalf is estimated by calculating the maximum damages in the aggregate based on the available evidence and then discounting by the chances of the court denying certification, the chances of losing at trial, and the chances of winning at trial but losing on appeal. Naturally, if the court denies certification, there is no class and to the extent any value remains in the case, it derives almost entirely from the value of a plaintiff's individual claims.

In addition, to the risks associated with class certification as is described above, Plaintiff took into consideration: (i) the strength of Defendant's defenses on the merits; (ii) the risk of losing on any of a number of dispositive motions that could have been brought between certification and trial (e.g., motions to decertify the class, motions for summary judgment, and/or motions in limine) that might have eliminated all or some of Plaintiff's claims; (iii) the risk of losing at trial; (iv) the chances of a favorable verdict being reversed on appeal; and (v) the difficulties attendant to collecting on a judgment.

Defendants also have several affirmative defenses that it would argue. For example, with respect to Plaintiff's meal break claims, because meal breaks need only be

"provided" under California law and employers have no obligation to ensure they are taken, Defendants argued throughout the litigation that Plaintiff would be unable to show why meal breaks were missed. *See Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1039-40 & n.19 (2012). In addition, discovery showed that Defendants had paid a significant amount of meal break penalties for missed meal breaks (approximately $1.3 million). (Banerjee Decl. ¶ 8).

Similarly, Defendants argued throughout the litigation that California's "authorize and permit" requirement for rest breaks was satisfied, because although rest breaks may have been missed, they were "authorized and permitted." Defendants also argued that claims for unpaid wages and overtime were either not compensable and/or required individualized inquires. (Banerjee Decl. ¶ 9). And because Plaintiff's wage statement and waiting time penalties were derivative of these claims, Defendants would argue the same defenses apply. And with respect to the waiting time penalty claim, Defendants would have the additional defense of arguing that any failure to pay wages upon termination was not "wilful." *Amaral v. Cintas Corp No. 2*, 163 Cal. App. 4th 1157, 1204 (2008) ("So long as no other evidence suggests the employer acted in bad faith, presentation of a good faith defense, based in law or fact, will negate a finding of willfulness.").

Even if Plaintiff succeeded in certifying the class and on the merits—which he believed he would—the amount of potential damages were also in dispute. For example, with respect to Plaintiff's wage statement claim Defendant would have argued (by analogy to case law interpreting penalties under Labor Code sections 201 and 225.5), that it would be improper to assess $100 penalties for "subsequent violations" as there has been no formal finding of any "initial" violations. *See Amaral*, 163 Cal. App. 4th at 1209.

To be clear, Plaintiff does not agree that these arguments Defendants raised are valid or a correct interpretation of the law. However, Plaintiff and Plaintiff's counsel took these arguments into consideration, and the risk of loss when determining a fair and

reasonable value for the settlement.

**C. The Consideration Provided for the PAGA Claim Is Fair and Reasonable In Light of the Amount in Controversy Discounted by the Risks of Continued Litigation**

Based on the forgoing class allegations, Plaintiff alleges that Beacon is liable for civil penalties under PAGA. While the method of calculating PAGA penalties is straightforward, the analysis becomes more difficult for settlement purposes as PAGA penalty claims are only as strong as the underlying predicate claims. Statutory penalties would be calculated according to Labor Code 2699(f)(2): If, at the time of the alleged violation, the person employs one or more employees, the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation.

However, some courts have interpreted Labor Code section 2699(f)(2) to impose the enhanced "subsequent violation penalty" or "heightened penalty" only after an employer has been notified that its conduct violates the Labor Code. *See Trang v. Turbine Engine Components Technologies Corp.*, No. CV 12–07658 DDP (RZx), 2012 WL 6618854 (C.D. Cal. Dec. 19, 2012) ("courts have held that employers are not subject to heightened penalties for subsequent violations unless and until a court or commissioner notifies the employer that it is in violation of the Labor Code"); *Amalgamated Transit Union Local 1309, AFL-CIO v. Laidlaw Transit Services, Inc.*, No. 05cv1199–IEG–CAB, 2009 WL 2448430 (S.D. Cal. 2009) (finding that California law imposes the "subsequent violation penalty" only after an employer has been notified its conduct violates the Labor Code). While Plaintiff regards this interpretation as flawed, he nonetheless recognizes that this interpretation has gained traction with some courts, and elected therefore to conservatively estimate Beacon's maximum potential exposure for PAGA penalties by assessing a $100 penalty for all pay periods during the one-year statute of limitations.

It should be noted that PAGA gives the Court wide latitude to reduce the amount of civil penalties "based on the facts and circumstances of a particular case" when "to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." Cal. Lab. Code § 2699(h). In reducing PAGA penalties, courts have considered issues including whether the employees suffered actual injury from the violations, whether the defendant was aware of the violations, and the employer's willingness to fix the violation. *See Starbucks Corp.*, 30 Cal. App. 5th at 529 (awarding PAGA penalties of only 0.2% of the maximum); *see also Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1037 (N.D. Cal. 2016); *Fleming v. Covidien*, 2011 WL 7563047, at *4 (C.D. Cal. 2011).

For example, during the penalty phase of trial in *Starbucks*, the plaintiff requested PAGA penalties in the amount of approximately $70 million. The trial court instead awarded only $150,000—or 0.21% of the maximum—and stated this reduction was warranted because imposing the maximum penalty would be "unjust, arbitrary, and oppressive" based on Starbucks's "good faith attempts" to comply with meal period obligations and because the court found the violations were minimal. *Starbucks*, 30 Cal. App. 5th at 517. The Court of Appeal affirmed the lower court's reduced award of a $150,000 penalty under PAGA. *Id.* at 529.

Likewise, in *Lyft*, the Court found that a $1 million PAGA settlement was fair and reasonable in light of the unsettled nature of the law, resulting in a $2.52 per pay period award to the aggrieved employees (there were 397,110 pay periods in a $1 million PAGA settlement, resulting in a 97.5% reduction from the maximum). In *Covidien*, the Court reduced the potential penalties by over 82%, awarding $500,000 for 28,742 pay periods at issue, or approximately $17.40 per pay period. *See also*, e.g., *Thurman v. Bayshore Transit Mgmt.*, 203 Cal. App. 4th 1112, 1135-36 (2012) (affirming 30% reduction under specified PAGA claim where the employer produced evidence that it took its obligations seriously); *Elder v. Schwan Food Co.*, No. B223911, 2011 WL 1797254, at *5-*7 (Cal. Ct. App. May 12, 2011) (reversing trial court decision denying

any civil penalties where violations had been proven, remanding for the trial court to exercise discretion to reduce, but not wholly deny, civil penalties); *Li v. A Perfect Day Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2012 WL 2236752, at *17 (N.D. Cal. June 15, 2012) (denying PAGA penalties for violation of California Labor Code § 226 as redundant with recovery on a class basis pursuant to California Labor Code § 226, directly); *Fleming v. Covidien Inc.*, No. ED CV 10-01487 RGK (OPx), 2011 WL 7563047, at *4 (C.D. Cal. Aug. 12, 2011) (reducing PAGA penalties from $2.8 million to $500,000.00); *Aguirre v. Genesis Logistics*, No. SACV 12-00687 JVS (ANx), 2013 WL 10936035 at *2-*3 (C.D. Cal. Dec. 30, 2013) (reducing penalty for past PAGA violations from $1.8 million to $500,000.00, after rejecting numerous PAGA claims).

Considering the issues, defenses, and the risks, a $20,000 settlement for PAGA penalties is a fair and just result and furthers PAGA's objectives, and is not "unjust, arbitrary, and oppressive." Plaintiff therefore determined an appropriate range of settlement for PAGA penalties as a percentage of the settlement range that was consistent with other hybrid class/PAGA settlements approved by California courts. *See Dearaujo v. Regis Corp.*, No. 2:14-cv-01408-KJM-AC (E.D. Cal. June 29, 2016), 2016 WL 3549473 at *3 (preliminarily approving $1.95 million settlement containing $10,000 PAGA penalties with $7,500 paid to LWDA); *Garcia v. Gordon Trucking, Inc.*, No. 1:10–CV–0324 AWI SKO (E.D. Cal. Oct. 31, 2012), 2012 WL 5364575 at *7 (approving $3.9 million settlement containing $10,000 PAGA penalties with $7,500 paid to LWDA); *Chu v. Wells Fargo Invst., LLC*, No. C 05–4526 MHP (N.D. Cal Feb. 16, 2011), 2011 WL 672645 at *1 (approving $6.9 million settlement containing $10,000 PAGA penalties with $7,500 paid to LWDA); *Guerrero v. R.R. Donnelley & Sons Co.*, Case No. RIC 10005196 (Riverside County Super. Ct. July 16, 2013; Judge Matthew C. Perantoni) (gross settlement fund of $1,100,000, of which $3,000 (or 0.3%) was allocated to the settlement of PAGA penalties); *Parra v. Aero Port Services, Inc.*, No. BC483451 (L.A. County Super. Ct. April 20, 2015; Judge Jane Johnson) (gross settlement fund of approximately $1,458,900, of which $5,000 (or 0.3%) was allocated

to the settlement of PAGA penalties); *Thompson v. Smart & Final, Inc.*, No. BC497198 (L.A. County Super. Ct. Nov. 18, 2014; Judge William F. Highberger) (gross settlement fund of $3,095,000, of which approximately $13,333 (or 0.4%) was allocated to the settlement of PAGA penalties); *Chavez v. Vallarta Food Enterprises, Inc.*, No. BC490630 (L.A. County Super. Ct. Nov. 10, 2014; Judge William F. Highberger) (gross settlement fund of $1,545,900, of which $10,000 (or 0.6%) was allocated to the settlement of PAGA penalties); *Coleman v. Estes Express Lines, Inc.*, No. BC429042 (L.A. County Super. Ct. Oct. 3, 2013; Judge Kenneth R. Freeman) (gross settlement fund of $1,535,000, of which $1,000 (or 0.1%) was allocated to the settlement of PAGA penalties).

Where PAGA penalties are negotiated in good faith and "there is no indication that [the] amount was the result of self-interest at the expense of other Class Members," such amounts are generally considered reasonable. *Hopson v. Hanesbrands Inc.*, Case No. 08-00844, 2009 U.S. Dist. LEXIS 33900, at *24 (N.D. Cal. Apr. 3, 2009); *see*, *e.g.*, *Nordstrom Com. Cases*, 186 Cal. App. 4th 576, 579 (2010) ("[T]rial court did not abuse its discretion in approving a settlement which does not allocate any damages to the PAGA claims.").

**D. The Settlement Was Reached through Arm's-Length Bargaining in Which All Parties Were Represented by Experienced Counsel**

As discussed above, the Settlement is the result of arm's-length negotiations by experienced counsel. The Parties were represented by experienced class action counsel throughout the negotiations resulting in this Settlement. Plaintiff is represented by Arnab Banerjee of Banner Law Group and Joshua Cohen Slatkin of the Law Offices of Joshua Cohen Slatkin. The attorneys are seasoned class action attorneys who regularly litigate wage and hour claims through certification and on the merits, and have considerable experience settling wage and hour class actions. (*See* Plaintiff's Motion for Attorney's Fees and Class Representative Enhancement [Dkt #39]). Defendant is represented by Karin Cogbill of Hopkins Carley which operates a respected wage and hour defense

practice.

As this Settlement is the "result of 'arms-length' negotiations by experienced class counsel, [it is] entitled to 'an initial presumption of fairness.'" *Volkswagen*, 2016 WL 4010049, at *14 (internal citation omitted).

**E. The Parties Conducted a Thorough Investigation of the Factual and Legal Issues**

The Settlement is the product of informed negotiations following extensive investigation by Plaintiff's Counsel. During this matter's pendency, the Parties thoroughly investigated and researched the claims in controversy, their defenses, and the developing body of law as is detailed in Plaintiff's motion for Preliminary approval and is summarized above.

By engaging in a thorough investigation and evaluation of Plaintiff's claims, Plaintiff's Counsel can opine that the Settlement, as set forth in the Settlement Agreement, is fair, reasonable, and adequate, and is in the best interests of Class Members in light of all known facts and circumstances, including the risk of significant delay and uncertainty associated with litigation and various defenses asserted by Defendant. (Banerjee Decl. ¶ 10.)

**F. The Settlement Class Has Responded Positively to the Settlement**

The Settlement Class' response to date demonstrates its support for this settlement—not a single Class Member has objected to the Settlement and not a single Class Members opted out of the Settlement Class. (Cita Decl. ¶¶ 9-11.) The highest payment is approximately $586.66 and the average amount to be paid is approximately $195.20. (Cita Decl. ¶ 14.) A low number of opt-outs and objections is a strong indicator that a settlement is fair and reasonable. *7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal. App. 4th 1135, 1152-53 (2000) (class response favorable where "[a] mere 80 of the 5,454 national class members elected to opt out [(1.5% of the entire Class)] and . . . [a] total of nine members . . . objected to the settlement); *Churchill Village, LLC v. General Electric*, 361 F.3d 566 (9th Cir. 2004) (affirming settlement

approval where 45 of approximately 90,000 notified class members objected and 500 opted out). The Settlement Class' response—both in a zero rate of opt-outs and the complete absence of objectors—compares favorably to those cases and warrants final approval.

Likewise, the average Class Member recovery of almost $200 compares favorably to other wage and hour class action settlements for similar claims on behalf of non-exempt employees. *See*, *e.g.*, *Jones v. Bath & Body Works, Inc.*, No. 2:13-cv-05206-FMO-AJW (C.D. Cal. July 11, 2016) (average net recovery of approximately $50); *Palencia v. 99 Cents Only Stores*, No. 34-2010-00079619 (Sacramento County Super. Ct.) (average net recovery of approximately $80); *Doty v. Costco Wholesale Corp.*, Case No. CV05-3241 FMC-JWJx (C.D. Cal. May 14, 2007) (average net recovery of approximately $65); *Sorenson v. PetSmart, Inc.*, Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal.) (average net recovery of approximately $60); *Lim v. Victoria's Secret Stores, Inc.*, Case No. 04CC00213 (Orange County Super. Ct.) (average net recovery of approximately $35); and *Gomez v. Amadeus Salon, Inc.*, Case No. BC392297 (L.A. Super. Ct.) (average net recovery of approximately $20).

### G. The Requested Payment to the Settlement Administrator Is Reasonable and Should Receive Final Approval

Plaintiff requests final approval of settlement administration costs in the amount of $18,500. (Cita Decl. ¶ 16, Ex. B.) Simpluris has promptly and properly distributed the Class Notice to all Class Members and completed its duties in accordance with the settlement terms and the Court's preliminary approval Order. (*See generally* Cita Decl.) Accordingly, the $18,500 payment is fair and reasonable and should be accorded final approval along with the rest of the Settlement terms.

## IV. CONCLUSION

The Parties have negotiated a fair and reasonable settlement of a case that provides relief that likely would never have been realized but for this class action. Accordingly, final approval of the Settlement should be granted.

Dated: April 26, 2021

Respectfully submitted,

Banner Law Group

By: /s/ Arnab Banerjee
Arnab Banerjee

Plaintiff Manuel Andrade